FILED
2007 Aug-31  PM 05:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **VAN LOCKWOOD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | Civil Action Number |
| **JERE L. BEASLEY;  J. GREGG** | ) | **1:04-cv-1405-UWC** |
| **ALLEN;  WILLIAM G. O'REAR, JR.,** | ) | |
| ***et al* LAW FIRMS,** | **)** | |
| | **)** | |
| Defendants. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case arises out of the Plaintiff's dissatisfaction with his counsel's

receipt of forty percent (40%) of a $300 million settlement fund as attorney's fees

in *Tolbert v. Monsanto Company* ("*Tolbert*") (N.D. Ala. Civil Action No:.2:01-cv-

1407-UWC). Van Lockwood, one of the more than 18,000 individual *Tolbert*

plaintiffs, commenced the instant action against three of the lawyers representing

the *Tolbert* plaintiffs.  In this action, Plaintiff seeks twenty-eight percent (28%) of

the 120 million ($ 33.6 million**)** from these Defendants.

Cross-motions for summary judgment are pending before the Court, after

the Eleventh Circuit's reversal of the Court's earlier dismissal of the action based

Page 1 of  10

on the affirmative defense of release.[1]  Based on the pleadings, affidavits, and

other submissions in the record,  together with judicial notice of the *Tolbert* file,

the Court makes the following Undisputed Findings of Fact and Conclusions of

Law.

## A.  UNDISPUTED FINDINGS OF FACTS

1.  On March 7, 2002, Plaintiff signed a "PCB Fee Agreement," with the law

firms of Beasley-Allen ("B-A"), Cochran, Cherry, Givens & Smith (CCGS"), and

Burr & Forman ("BF").  The Agreement provides, in relevant part:

> 45%  LEGAL FEE. If no recovery (by settlement or trial) is
> obtained, client will not owe a legal fee or expenses. If B-A,
> CCGS and BF obtain settlement for Client, Client will pay B-A,
> CCGS and BF forty-five percent (45%) of the total recovery
> less expenses.

> TERMINATION OF THIS AGREEMENT. If this agreement is
> terminated before the case is resolved, Client gives B-A, CCGS
> and BF a lien against any subsequent recovery in this case for
> B-A, CCGS and BF's time and expenses.  If an offer has been
> negotiated, B-A, CCGS and B-F will have a lien upon any
> subsequent recovery equal to 45% of the offer, or an amount

---

[1] Actually, on August 10, 2004, the Defendants filed a "Motion To
Transfer/Consolidate And To Dismiss," while the case was pending before another Judge
on this Court.  (Doc. 9.)  The case was ultimately consolidated and transferred to this
Judge, who granted the motion to dismiss on the ground that the Plaintiff had released his
claims against the Defendants when he accepted a settlement check.  (Doc. 45.)  On
appeal, the Eleventh Circuit reversed, holding that the motion to dismiss was to be treated
as a motion for summary judgment; and that Plaintiff had not been afforded the
opportunity to respond to the motion.  (Doc. 52.)

to compensate for time and expenses, whichever is greater.

MISCELLANEOUS. Client has read this agreement (or has
had it read to him/her) and agrees to be bound by these terms.
Any modification in the terms of this agreement shall be
typewritten or handwritten in the margin below and initialed
by both parties.

(Doc. 9 at 22.)

    2.  On March 7, 2002, Plaintiff sent a letter addressed to "B-A, CCGS, and

BF," at Post Office Box 4160, Montgomery, AL 36103-4160. The letter reads:

                RE: Request Attached

        Please see enclosed the original PCB agreement, however; I am
reserving my rights on this *agreement to negotiate the lien. The
percentage (%) is too high. I must first recover before any
subsequent lien is had or realized.

        Thank you.

(Doc. 9 at 21.) [2]

     3. On March 12, 2002, someone at the Beasley-Allen law firm

acknowledged receiving this March 7 letter, which was delivered in an envelope

addressed to David Byrne, III, an attorney at the Beasley-Allen law firm.[3]  (Doc. 9

_____

    [2]  Throughout the proceedings related to his fee agreement claim, Plaintiff has
proceeded *pro se*.

    [3]  While the signature on the return receipt document is unclear, the signature does
not appear to be that of David Byrne, III.  (*See* Doc. 9 at 23.)

at 23.)

4. On April 23, 2002, Defendant O'Rear wrote to the Plaintiff and informed him that the Beasley-Allen law firm would no longer represent him.  (Doc. 9 at 24.)  A month later, O'Rear sent a second letter to Plaintiff advising him that on re-evaluation of Plaintiff's file, the firm would continue to represent him if he so desired.  (Doc. 9 at 26.)  O'Rear's letter also indicated that Plaintiff should notify O'Rear "in writing right away if " Plaintiff did not wish for the firm to continue representing him.  (*Id*.)  On May 29, Plaintiff responded: "Please pursue this claim. I accept.  Thanks."  (*Id.*)

5. Thereafter, Plaintiff was added by the three retained law firms as an individual plaintiff in *Tolbert*.

6. Neither Jere L. Beasley, J. Gregg Allen, William G. O'Rear, Jr., the Beasley-Allen Law Firm, nor any attorney in the other two law firms  has agreed to a modification of the March 7, 2002, PCB Fee Agreement at anytime.

7. None of the Defendants have executed a separate retainer agreement with the Plaintiff for representation in the *Tolbert* case.

8. On June 8, 2004, Plaintiff filed, in *Tolbert*, a document styled "Motion

for Summary Judgment." [4]  (*Tolbert* Doc. 323.)  The document was captioned,

"VAN LOCKWOOD, 'et alius'  Plaintiff, V. TOLBERT et al  MONSANTO" and

it indicated that it was a

> COMPLAINT;  FOR ATTACHMENTS, COMPULSORY
> COUNTERCLAIM, . . . CROSS-CLAIM, . . . REPUDIATION,
> UNJUST ENRICHMENT,  DISGORGEMENT, LIEN AGAINST
> ATTORNEY FEES, CONSTRUCTIVE FRAUD, AND SEEKING A
> CONSTRUCTIVE TRUST.

(*Tolbert,* Doc. 323 at 1.)  In this Motion for Summary Judgment, among other

things, Plaintiff stated that his "claim is for 28% of the $120 MILLION

DOLLARS out of courts settlement."  (*Tolbert* Doc. 323 at 13.)

9. The three law firms representing the *Tolbert* plaintiffs received an

aggregate attorney's fee of $120 million from the Settlement Fund in that case.

10. The Court summarily denied Plaintiff's summary judgment motion in

the *Tolbert* case on June 16, 2004.  (*Tolbert*  Doc. 329).

11.  Final Judgment was entered in *Tolbert* on August 10, 2004.  (Doc. 9 at

30-37.)

12. The *Tolbert* Final Judgment and Order provides, in pertinent part:

> 10.    The terms of the Settlement Agreement and this Final
> Judgment and Order shall be forever binding on all Plaintiffs (as

---

[4]As noted earlier, Plaintiff was one of the more than 18,000 named plaintiffs in the
*Tolbert* action.

defined in paragraph 11), as well as their heirs, executors and administrators, successors and assigns; and those terms shall be *res judicata* and have other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained or on [*sic*] behalf of any such persons, to the extent that such claims, lawsuits, or other proceedings involve PCBs in Anniston, Alabama or other claims that could have been raised by this action or are otherwise encompassed by this action and the Final Judgment and Order of the Court.

11.   This Final Judgment and Order shall be binding on all parties to this action. . . .   Plaintiffs to be bound shall be defined as all persons named as plaintiffs in any complaint or amended complaint filed in these actions to date. . . .

. . . .

13.   The Court shall retain complete jurisdiction of this action, all parties, and all related matters.

(Doc. 9 at 36, 37.)

13. Plaintiff did not appeal either the denial of his motion for summary judgment in *Tolbert*, or the Final Judgment and Order entered in that case.

14. Plaintiff's claims against the Monsanto Company were settled in the *Tolbert* litigation.

15. While the instant action was pending, Plaintiff continued to participate in the settlement aspects of *Tolbert*.  He received a $500 check during the initial phase of the settlement administration.  His body was tested for the presence of PCBs; and once his PC level was established, he received several other checks

from the settlement administrator.  He does not know how much in settlement

funds his lawyers obtained for him, but he thinks it to be between $4,000 and

$10,000.[5]

16. Within two weeks of the denial of his summary judgment motion in

*Tolbert*, Plaintiff filed the instant action on July 1, 2004.

17. In the original complaint filed in this action, Plaintiff says, among other

things:

> On June 8, 2004, I filed a motion for summary judgment under the
> "style" that gave the true Defendants, (herein should be known as B-
> A et al Law Firm) an opportunity once again to settle this matter "out
> of court" without suing them directly or carrying them before the
> Alabama Bar; however from June 9, 2004 untill today June 25, 2004,
> they still have not as yet provided me with adequate assurances that
> they intend to do the right thing and pay the claim for 28% out of
> courts settlement . . . .

(Doc. 1 at 4. )

## CONCLUSIONS OF LAW

1. None of the individual Defendants entered into a retainer agreement with

the Plaintiff.  Therefore, each of them, in his individual capacity, is entitled to

---

[5]  Plaintiff says that he only negotiated the $500 check and that it did not contain
release language.  Afterward, he opened envelopes with checks for $925.79 and $1538.00
respectively, but did not negotiate the checks because of the release language.  For that
reason, he did not open other envelopes (presumably with checks in them) from the
settlement administrator.

judgment as a matter of law.  *See Drummond Co., Inc. v. Walter Indus., Inc.*, __

So. 2d __, No. 1041029 and 1041221, 2006 WL 3462146, at * 17 (Ala. Dec. 1,

2006) ("A contract cannot be formed without an offer, an acceptance,

consideration, and mutual assent to those terms essential to the contract.").


    2. The  PCB retainer agreement executed between the Plaintiff, the

Defendants' law firm, and two other law firms that provides, in the event of

settlement, the firms would be entitled to forty-five percent (45%) of the recovery

has never been modified; therefore, the agreement remained in full force and effect

at all material times.  *See Beiersdoerfer v. Hilb, Rogal and Hamilton Co.*, 953 So.

2d 1196, 1206 (Ala. 2006) ("Any terms of [a contract] not effectively modified

remain[] in effect.").

    3. Plaintiff's March 7, 2002, letter to the three law firms did not indicate an

intention to modify the "45 % Legal Fee" provision of the PCB retainer

agreement; rather, the letter sought to modify the "Termination" provision, which

embodies language concerning a lien.  In any event, Plaintiff's letter did not

constitute a modification in the PCB retainer agreement.  *See Kinmon v. J.P. King

Auction Co.*, 276 So. 2d 569, 570-71 (Ala. 1973) ("Contracting parties are free to

modify their contract by <u>mutual</u> assent.  [However, [u]nilateral grumbling cannot

modify a bilateral contract.") (emphasis added).

3. As a matter of law, the law firms which represented the plaintiffs in the *Tolbert* litigation, including the Plaintiff in the instant case, were entitled to $135 million as fees, rather than the $120 million which they actually received.

4.  In view of the executed PCB retainer agreement, and the law firms' performance of their obligations under the agreement, to the extent that they may be deemed defendants in this action, the law firms are entitled to judgment as a matter of law on the Plaintiff's claim.

5. Since the individual Defendants and the three law firms that represented the plaintiff in *Tolbert* were not parties to that action, and the causes of action were not identical, Plaintiff's claims are not barred by the doctrine of *res judicata. Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1187 (11th Cir. 2003); *Jang v. United Tech. Corp.,* 206 F.3d 1147, 1149 (11th Cir. 2000).

 5. Since the resolution of Plaintiff's claim against his attorneys was not essential to the judgment in the *Tolbert* litigation, Plaintiff is not collaterally estopped from maintaining any action against the individual Defendants or the law firms which represented him in that litigation.  *Precision Air Parts v. Avco Corp.,* 736 F.2d 1499, 1501 (11th Cir. 1984);  *Vazquez v. Metropolitan Dade County,* 968 F.2d 1101, 1106-08 (11th Cir. 1992).

6. Plaintiff's  claim for $36.6 million from the Defendants is completely without merit and frivolous.

By separate order, final judgment will be entered in favor of the Defendants and against the Plaintiff.

Done this 31st day of August, 2007.


_____

U.W. Clemon
United States District Judge